UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RICHARD YOOS and JUDY YOOS,

                              Plaintiffs,

        -against-                                              1:09-CV-0660 (LEK/DRH)

BETTER LIFE TECHNOLOGY, LLC;
CANADIAN PACIFIC RAILWAY; and
NORFOLK SOUTHERN RAILWAY,

                              Defendants.

_____

## DECISION and ORDER

### I.    INTRODUCTION

        On July 9, 2009, Plaintiff Richard Yoos ("Plaintiff" or "Yoos") and Plaintiff Judy Yoos

(collectively, "Plaintiffs") commenced this diversity action against Defendants Better Life Technology,

Inc. ("Defendant" or "Better Life"), Canadian Pacific Railway ("Defendant Canadian Pacific"), and

Norfolk Southern Railway ("Defendant Norfolk Southern") (collectively, "Defendants"), alleging

negligence against Better Life, and negligence and gross negligence against each of the other

Defendants.[1]  Dkt. No. 1 ("Complaint").  Presently before the Court is a Motion for summary judgment

filed by Better Life on May 13, 2011.  Dkt. No. 42 ("Motion").  Plaintiff opposes the Motion.  Dkt. No.

49 ("Opposition").  For the reasons stated below, Better Life's Motion is denied.

### II.   BACKGROUND

        In September 2008, Yoos was a truck driver employed by J.B. Hunt Trucking, Inc. ("J.B.

_____

        [1] Defendants have all filed cross-claims against one another for damages in the event that
Plaintiffs recover against any of them.  See Def. Canadian Pacific Answer (Dkt. No. 7) ¶¶ 22-23; Def.
Better Life Answer (Dkt. No. 22) ("Answer") ¶¶ 15-16; Def. Norfolk Southern Answer (Dkt. No. 29) ¶¶
22-23.

Hunt"). Compl. ¶ 5; Pl.'s Dep. Tr. (Dkt. No. 42-7) 20:10-16, 23:16-23. Better Life is a producer and supplier of vinyl flooring that is authorized to do business in the state of New York and has its corporate address in Lenexa, Kansas. Compl. ¶ 2; Answer ¶ 3. Better Life contracts with several vendors who sell the product that is manufactured and produced at Better Life's facility in Emporia, Kansas. Defendant's Statement of material facts (Dkt. No. 42-14) ("DSMF") ¶ 2. One of these vendors, Costco Wholesale Corporation ("Costco"), placed an order from Better Life for twenty pallets of heavy-duty polyvinyl garage floor covering that weighed approximately 43,600 pounds. Id. ¶ 4. Costco then hired J.B. Hunt to transport its order from the Emporia facility to a destination in Canada. Id. ¶ 13.

According to Richard Evans ("Evans"), a plant manager at the Emporia facility, when loading a trailer for shipment Better Life's employees advise the truck drivers as to Better Life's "recommended way of loading" the cargo so that its weight is evenly distributed along the axles, and the driver decides whether to follow their recommended procedures or not. Richard Evans Dep. Tr. (Dkt. No. 42-9) ("Evans Dep. Tr.") 40:9-12, 54:3-5. However, Better Life employees are responsible for physically loading the cargo into the trailer. Id. 40:13-14. According to Evans, a driver can refuse a load if Better Life does not load a container according to his or her preferences; at the same time, Evans testified that he may refuse, and on at least one occasion has refused, to load cargo when the driver insisted on a loading configuration that Evans believed would cause damage to Better Life's products.[2] Id. 72:6-73:10. Evans has also stated that, although he has never refused to load a vehicle when he believed a loading arrangement requested by a driver to be unsafe, he has recommended alternative loading

---

[2] When asked if he could recall any specific instances where a driver refused to accept a load, Evans only responded: "Yeah, that is why – I mean – and I have refused to – I have refused, you know, to send out my product one time." Evans Dep. Tr. 72:16-18.

specifications to drivers in such situations and the drivers usually follow his recommendations.  Id. 76:3-13.

On or about September 12, 2008, pursuant to a contract between J.B. Hunt and Creel Trucking, Inc. ("Creel Trucking"), Jerry McCown ("McCown"), a driver for Creel Trucking, arrived at Better Life's Emporia facility to pick up Costco's order.[3]  Compl. ¶ 7; Plaintiff's Statement of material facts (Dkt. No. 52) ("PSMF") ¶ 1.  According to Evans, this cargo was loaded by Defendant onto the truck's container and sealed before being transported to a rail yard in the truck driven by McCown.  Evans Dep. Tr. 40:13-17, 47:6–48:7, 59:20-24, 61:2-15.  Although Evans does not specifically recall discussing the cargo at issue in this case with McCown, he reviewed the truck's "load sheet," which describes how a particular cargo's weight is distributed in a container, and testified that the loading configuration described on the sheet did not comport with Better Life's recommended procedure for loading such products in a trailer:

> Q. Does that load sheet tell you how this particular trailer was loaded?
> A [Evans]. Yes.
> Q. Is it loaded in some fashion other than Better Life Technologies' recommended way of loading the tractor? . . .
> A. Yes.
> Q. Do you know why that was?
> A. Because the driver wanted it loaded this way. . . . . . I know I was out there.  I may

---

[3]  After Magistrate Judge David R. Homer denied their request to join Creel Trucking in the present action, Defendants commenced a separate third-party action against Creel Trucking, on the grounds that McCown, as Creel Trucking's employee, "accepted the material, and was therefore responsible for application of any strapping or bracing within the cargo container."  Dkt. No. 39 at 2; see also Dkt. No. 41; Minute Entry for proceedings before Judge Homer (Mar. 18, 2011); Better Life Tech., LLC v. Creel Trucking, Inc., No. 1:11-cv-00291, Dkt. No. 1 (N.D.N.Y. filed Mar. 16, 2011).  Plaintiff also filed a Complaint against Creel Trucking on May 13, 2011.  Yoos v. Creel Trucking, Inc., No. 1:11-cv-00539, Dkt. No. 1 (N.D.N.Y. filed May 13, 2011).  Both of these cases have been consolidated pursuant to Decision and Order of Judge Homer dated September 14, 2011, and are also pending as a separate action before this Court.  Yoos v. Creel Trucking, Dkt. No. 21 (citing FED. R. CIV. P. 42(a)).

3

> have been the one that talked to him . . . .
> Q. Do you remember talking to the driver about how the trailer was to be loaded?
> A. No. I know we did because of the way it is loaded [according to the load sheet]. I mean, we talk to every driver.

Evans Dep. Tr. 50:22–52:20, 53:3-6; Def. Exh. H (Dkt. 42-11). Although Evans testified that he could not specifically recall meeting with McCown, he also later stated that he recalled advising McCown at one point that "it has been our experience that . . . this is the best way to load the particular product on the truck," but that he "didn't know if it would be unsafe" to load the cargo in the way that McCown preferred. Id. 74: 25–75:21. Evans also testified that he would have advised McCown to secure the cargo with straps or bars, consistent with Better Life protocol in loading its products into containers for shipment. Id. 76:21–77:3.

After Better Life loaded the products onto the container and sealed it, the truck load was taken by McCown to a nearby train station and transported by rail to Albany, New York, where the sealed load was picked up by Plaintiff on or about September 25, 2008.[4] Pl. Dep. Tr. at 54:21–56:4. Following instructions by J.B. Hunt, Yoos accepted the load as packaged in the trailer by Better Life, and had it placed on his truck without breaking any seals on the container. Id. at 62:23–63:13.

After accepting the load, Yoos left the rail depot in Albany and proceeded along Interstate 87. Id. at 69:2–71:25, 74:17-23. When Plaintiff attempted to navigate a turn driving on an exit ramp off of the highway, the trailer tipped over to the left and the entire truck landed on the side of the road. Id. at 78:3–79:14. According to Plaintiff, the accident occurred because Better Life, upon loading the trailer: (1) failing to properly secure the pallets inside the trailer with straps; and (2) failed to place padding between the wall of the trailer and the pallets to prevent the load from shifting inside the trailer.

---

[4] The Complaint alleges that either Defendant Canadian Pacific or Defendant Norfolk Southern transported the load from Kansas to Albany. Compl. ¶¶ 8-9.

Compl. ¶ 13.  Plaintiff claims to have suffered numerous physical injuries as a result of this accident, including lacerations, bruises, a contusion on his shoulder, a concussion, and a back injury that renders him unable to lift heavy weights.  Id. ¶ 19; Pl. Dep. Tr. 89:13-15, 92:21-24, 95:12-15, 106:3-14.  Plaintiff further alleges that he suffered from post-traumatic stress disorder and anxiety attacks stemming from the accident.  Pl. Dep. Tr. 96:12-16, 104:6-11.  Plaintiffs also seek damages for lack of consortium as a result of the accident.  Compl. ¶¶ 40-43; Pl.'s Dep. Tr. 99:18–100:23.

**III.     STANDARD OF REVIEW**

Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  A genuine issue of material fact exists if the evidence shows that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To decide a motion for summary judgment, all reasonable evidentiary inferences must be made in favor of the nonmoving party.  See id. at 255; City of Yonkers v. Otis Elevator Co., 844 F.2d 42, 45 (2d Cir. 1988).  On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has carried its burden on a motion for summary judgment, the burden shifts to the nonmoving party to show the existence of a genuine dispute for trial.  See Anderson, 477 U.S. at 250.  In deciding whether summary judgment is appropriate, the Court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The Court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them."  Gallo v. Prudential Residential Servs., Ltd.

P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

## IV.    DISCUSSION

In a diversity case such as this, the Court applies the substantive law of the state whose law governs the action. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Under New York law, "a plaintiff must establish three elements to prevail on a negligence claim: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111, 114 (2d Cir. 2000) (quoting Akins v. Glen Falls City Sch. Dist., 424 N.E.2d 531, 535 (N.Y. 1981)). Better Life argues that it is entitled to summary judgment because: (1) it had no duty of care towards Plaintiff in this case, or, alternatively; (2) to the extent that Better Life did have a duty of care, it discharged that duty by doing "everything possible to ensure that the load was properly positioned and secured, and followed [McCown's] directions." Defendant's Memorandum of law in support of summary judgment (Dkt. No. 42-15) ("Def.'s Mem.") at 9, 13-14. For the following reasons, the Court rejects these arguments.

### A.    Duty

"The question of the existence and scope of an alleged tortfeasor's duty 'is, in the first instance, a legal issue for the court to resolve.'" Alfaro, 210 F.3d at 114 (quoting Waters v. New York City Hous. Auth., 505 N.E.2d 922, 923 (N.Y. 1987)). New York courts have recognized that determining the scope of a defendant's duty "necessitates an examination of an injured person's reasonable expectation of the care owed and the basis for the expectation and the legal imposition of a duty." Palka v. Servicemaster Mgmt. Servs. Corp., 634 N.E.2d 189, 192 (N.Y. 1994) (citation omitted).

Upon review of the record, the Court concludes that Better Life owed a duty of care to Plaintiff in this case. Better Life claims that while it recommends to drivers how best to distribute a cargo load

6

and whether or not the load should be secured, the driver, not Better Life, ultimately decides how the load should be distributed. Evans Dep. Tr. at 46:22–49:20, 55:20–56:13. However, there is no indication in the record that Defendant is legally obligated to load cargo according to the driver's instructions, or that the driver takes any part in the loading process other than to provide a desired configuration to Better Life's employees, who actually load the truck. Moreover, Evans testified that Better Life employees may refuse to load cargo according to a driver's instructions if such a loading configuration would damage the company's products. Evans Dep. Tr. 72:16–74:8. In loading its products onto the trailer, Better Life incurred a duty to do so with care and so as not to increase the risk of harm to others. See Glanzer v. Shepard, 233 N.Y. 236, 239 (N.Y. 1922) ("[O]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."); cf. Rocco v. N.Y. Cent. Sys., 116 N.Y.S.2d 371, 373 (N.Y. Sup. Ct. 1956) (finding railroad company, as carrier, was not liable for injuries that occurred while plaintiff was unloading cargo that had been loaded and sealed by the shipper because the railroad company "owed no absolute duty to employees of the consignee to see to it that the load was safe for purposes of unloading") (citing Lewis v. New York, O. & W. Ry. Co., 104 N.E. 944, 945 (N.Y. 1914) (Cardozo, J.) (even assuming that freight car containing cargo that caused plaintiff's injury was negligently loaded, defendant railroad company was not liable where shipper, not the railroad company, loaded the car)).[5]

---

[5] Although New York state courts have not explicitly addressed this issue, the Court finds persuasive the reasoning of other federal courts in similar cases that it is reasonable for a truck driver to expect that the shipper that loads cargo onto his truck container will do so in a manner that is safe and will not increase the likelihood of accident or injury. See Spence v ESAB Group, Inc., 623 F.3d 212, 221 (3d Cir. 2010) (citing Franklin Stainless Corp. v. Marlo Transp. Corp., 748 F.2d 865, 869 (4th Cir. 1984) (finding reasonable a driver's reliance on shipper's assurances in imposing duty of care on shipper)) (noting that the Fourth Circuit's finding in Franklin accords with § 323 of the Restatement (Second) of Torts); accord J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.,

(continued...)

Defendant relies on Hamilton Beretta U.S.A. Corp., 96 N.Y.2d 222, 233 (N.Y. 2001), and D'Amico v. Christie, 71 N.Y.2d 76, 78 (N.Y. 1987), for the proposition that "a defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others, even where as a practical matter [the] defendant can exercise such control." Defendant's Reply memorandum of law in support of summary judgment (Dkt. No. 55-3) ("Def.'s Reply Mem.") at 3. However, this reliance is misplaced because Plaintiff is not suing Defendant on the theory that Better Life failed to control McCown's actions. Rather, Plaintiff claims that Defendant's own actions in loading its cargo into the trailer onto McCown's truck and failing to secure it were performed negligently and contributed to causing the accident. Compl. ¶¶ 13-14. As already noted, Defendant, not the driver, actually performs the loading of trucks, advises drivers on loading and securing the cargo, and has the ability to refuse to load a truck according to a driver's wishes if Defendant thinks that loading configuration will damage the cargo. Evans Dep. Tr. at 72:16–74:8; see also Lewis, 104 N.E. at 945; Rocco, 116 N.Y.S.2d at 373; accord Spence, 623 F.3d at 219 ("[T]he shipper may . . . owe a duty of care depending upon the role it assumes in connection with loading and securing its cargo"); Savage, 209 F.2d at 445.

Lastly, Defendant argues that if it did owe a duty of care to the Plaintiff, that duty of care was limited to preventing defects in the loading that were concealed or latent. Def.'s Reply Mem. at 13-14.

---

⁵(...continued)
341 F.3d 149, 155 (2d Cir. 2003) (citing Restatement (Second) of Torts § 323). Cf. Ebasco Servs., Inc. v. Pacific Intermountain Express Co., 398 F. Supp. 565, 568 (in determining comparative fault, "[w]hen the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier.") (quoting United States v. Savage Truck Line, Inc., 209 F.2d 442 (4th Cir. 1953)). The shipper's duty to load cargo in this manner extends not only to each carrier who takes possession of the cargo, but also to others who rely on the expectation that the cargo was loaded safely. See MacPherson v. Buick Motor Co., 217 N.Y. 382, 393 (N.Y. 1916) ("There is nothing anomalous in a rule which imposes on A, who has contracted with B, a duty to C and D and others according.").

8

"When the shipper assumes the responsibility of loading, the general rule is that he becomes liable for the defects which are latent and concealed and cannot be discerned by ordinary observation by the agents of the carrier." Ebasco Servs., 398 F.Supp. at 568 (quoting Savage, 209 F.2d at 445); see also Instrument Sys. Corp. v. Associated Rigging & Hauling Corp., 416 N.Y.S.2d 5 (N.Y. App. Div. 1979). However, the rule articulated in the cases cited by Defendant addresses the allocation of comparative liability following a finding of negligence, not the existence or scope of a defendant's preexisting duty. Cf. Ebasco Servs., 398 F. Supp. at 568; Instrument Sys. Corp., 416 N.Y.S.2d at 6-7; see also Spence, 623 F.3d at 218-20; Savage, 209 F.2d at 445. Moreover, the question of comparative liability is a factual matter to be resolved by the fact-finder, not a matter of law to be resolved on summary judgment. See Ebasco Serv., 398 F.Supp. at 568; Instrument Sys. Corp., 416 N.Y.S.2d at 7.

Because the Court finds that Defendant owed a duty of care to Plaintiff, summary judgment for Defendant on this ground is denied.

### B. Breach

Better Life also claims that, even if it did owe a duty of care to the Plaintiff, it cannot be found to have committed a breach because it discharged its duty by preventing defects in the loading that were concealed or latent. Def.'s Mem. at 13-14. Defendant contends that the fact that the subject cargo was not secured by straps or bars was an open and obvious condition that would have been apparent to McCown as the driver; thus, if that condition can be deemed a "defect," Defendant maintains that it is a defect for which the carrier is liable, not Better Life. Def.'s Reply Mem. at 2.

Even assuming, without finding, that Defendant's duty to Plaintiff in this case was limited only to preventing patent defects in the loading of the truck, the Court notes that the fact that a condition is open and obvious does not entail that the defect in that condition is open and obvious. See Franklin

Stainless Corp., 748 F.2d at 868-69 (holding that while the fact that a particular loading configuration

had been used "without strapping or choking" was an open and obvious condition, "it [did] not follow. .

. that the defect in this manner of loading was open and obvious."). The Federal Motor Carrier Safety

Regulations, which both parties cite, do not clearly answer this question, and at least imply that it is

possible for cargo to be safely "contained" or "immobilized" without also being "secured." See 49

C.F.R. § 393.100(c) (stating only that "[c]argo must be contained, immobilized, or secured in

accordance with this subpart to prevent shifting upon or within the vehicle."). While parties do not

dispute that the cargo in Plaintiff's cargo container had not been secured by means of straps or bars or

other restraints, the question of whether the lack of restraints was a patent or latent defect remains open.

Defendants therefore are not entitled to summary judgment on the basis of this argument.

  Moreover, contrary to Defendant's conclusory assertions that there were no latent defects in its

loading, the record indicates that there are issues of fact regarding exactly how Better Life actually

loaded the cargo into the container. Evans testified that he does not recall a specific conversation with

McCown regarding how the truck was to be loaded, and can only offer his conclusion that the truck

must have been loaded according to the driver's specifications because the bill of lading attached to the

subject cargo indicates a loading configuration different from the Defendant's recommended

configuration. See Evans Dep. Tr. at 53-55. Whether Better Life breached its duty of care to Plaintiff

in its loading and securing of the subject cargo is a question that must be left to the factfinder to resolve,

and is not appropriate for resolution at the summary judgment stage. Ebasco Serv., 398 F.Supp. at 568;

Instrument Sys., 416 N.Y.S.2d at 5; see also Padula v. County of Tompkins, 756 N.Y.S.2d 664, 666

(N.Y. App. Div. 2003); Willis v. City of N.Y., 697 N.Y.S.2d 656, 658 (N.Y. App. Div. 1999); Barshay

v. 273 Brighton Beach Ave. Rest., Inc., No. 13152/06, 2008 WL 2677535, at *4 (N.Y. Sup. Ct. June 30,

2008) (all finding questions of breach of duty in negligence cases more appropriate for jury resolution).

**V.       CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 42) is **DENIED**; and it

is further

**ORDERED**, that the Clerk shall serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

DATED:        January 23, 2012
              Albany, New York

                                        _____
                                        Lawrence E. Kahn
                                        U.S. District Judge

11